1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11   ANA E.D.[1],                    Case No. CV 20-4739-AS

12                Plaintiff,
                                     **MEMORANDUM OPINION**
13        v.

14   ANDREW M. SAUL, Commissioner
     of Social Security,
15
                 Defendant.
16

17

18        For the reasons discussed below, IT IS HEREBY ORDERED that,

19   pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's

20   decision is affirmed.

21

22

23

24

25        [1]    Plaintiff's name is partially redacted in accordance with
     Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation
26   of the Committee on Court Administration and Case Management of
     the Judicial Conference of the United States.
27

28

**PROCEEDINGS**

On May 28, 2020, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Dkt. No. 1). On October 26, 2020, Defendant filed an Answer and the Administrative Record ("AR"). (Dkt. Nos. 16-17). The parties have consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 10-12). On March 25, 2021, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 24).

The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On August 12, 2015, Plaintiff, previously employed as a waitress and home attendant (see AR 40, 62, 308), protectively filed her DIB application alleging disability since October 24, 2012. (AR 285-87). Plaintiff's application was denied initially on January 12, 2016 (AR 171-75), and upon reconsideration on May 25, 2016 (AR 177-82).

On January 25, 2018, Administrative Law Judge ("ALJ") James D. Goodman heard testimony from Plaintiff, who was represented by counsel. (AR 54-93). Afterward, the ALJ requested that Plaintiff

attend consultative psychological and orthopedic examinations, which took place on March 14 and March 21, 2018, respectively. (AR 2900-08, 2903-13). The ALJ then convened a second hearing on July 24, 2018, and indicated his intention to propound interrogatories on a vocational expert. (AR 50-53). Neither Plaintiff nor her counsel appeared at the July 24 hearing. (AR 52).

On September 25, 2018, the ALJ held a third hearing, with Plaintiff and her counsel in attendance. (AR 94-102). The ALJ determined that a medical expert's opinion was needed for the ALJ to make a disability determination regarding the relevant period between Plaintiff's alleged onset date of October 24, 2012, and her last insured date of December 31, 2013. (AR 101-02). Thus, after the hearing, medical interrogatories and cross-interrogatories were propounded on orthopedic medical expert Dr. Peter Schosheim, M.D. (AR 4403-07, 4373-88, 4389-4402, 4408-10, 4412-14). After that, vocational interrogatories and cross-interrogatories were propounded on vocational expert Gregory Jones (AR 454-67, 468-75, 478-83, 484-86, 487-89).

On May 13, 2019, the ALJ issued a decision denying Plaintiff's application. (AR 12-49). The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date of October 24, 2012, and her last insured date of December 31, 2013. (AR 24). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status post

anterior cervical fusion with internal fixation on January 11, 2013; degenerative disc disease of the lumbar spine; fibromyalgia; and obesity. (AR 25). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28). Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):[2]

> [Plaintiff could] perform light work as defined in 20 CFR 404.1567(b)[3] except that she could lift and carry up to twenty (20) pounds occasionally and ten (10) pounds frequently; could stand up to two (2) hours and walk up to two (2) hours and sit for six (6) hours cumulatively in an eight-hour day; could occasionally stoop, crawl, kneel, crouch, and bend, but could never climb ramps, ladders, ropes, or scaffolds; could frequently handle, finger, and reach above shoulder level with the left and right upper extremities; could have occasional exposure to excessive heat and cold but could never have exposure to vibrating surfaces; could have occasional exposure to moving mechanical parts; and could never work at dangerous heights or around possible electric shock.

---

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

(AR 30-31).

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a waitress or home attendant. (AR 39-40). At step five, based on Plaintiff's RFC, age, education, work experience, and the vocational expert's interrogatory responses, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including electronics worker, production assembler, and bench assembler. (AR 41-42). Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 43).

On July 25, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1-3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033,

1035 (9th Cir. 2001) (internal quotation omitted).  As a result,
"[i]f the evidence can support either affirming or reversing the
ALJ's conclusion, [a court] may not substitute [its] judgment for
that of the ALJ."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882
(9th Cir. 2006).

## DISCUSSION

Plaintiff claims that the ALJ erred in (1) rejecting part of
the medical expert's opinion; (2) rejecting Plaintiff's testimony;
and (3) relying on the vocational expert's response to conclude at
step five that Plaintiff had the ability to perform jobs existing
in significant numbers in the national economy.  (See Joint Stip.
at 3-37).  After consideration of the record as a whole, the Court
finds that the Commissioner's findings are supported by substantial
evidence and are free from material legal error.[4]

**A.    The ALJ Properly Rejected Part of the Medical Expert's Opinion**

**1.    Pertinent Facts**

After the hearing on September 25, 2018, as noted above, the
ALJ sought the opinion of a medical expert to review the evidence
of record and assess Plaintiff's functional limitations for the

---

[4]    The harmless error rule applies to the review of
administrative decisions regarding disability.  See McLeod v.
Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart,
400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be
reversed for errors that are harmless).

6

relevant period between Plaintiff's alleged onset date of October 24, 2012, and her last insured date of December 31, 2013. (See AR 101-02). To that end, on December 4, 2018, the ALJ propounded interrogatories on orthopedic specialist Dr. Peter Schosheim, M.D. (AR 4373-87).

In response to the ALJ's interrogatories, Dr. Schosheim opined, among other things, that during the relevant period Plaintiff was limited to standing or walking for two hours and sitting for six hours in an eight-hour workday; lifting or carrying ten pounds occasionally and twenty pounds frequently;[5] occasionally climbing, balancing, stooping, kneeling, crouching, or crawling; and frequently reaching, handling, or fingering. (AR 4398-99). When asked if there were "any other limitations or restrictions[] on [Plaintiff's] ability to do basic work activities established by the records as a whole," Dr. Schosheim responded "[n]o." (AR 4400). When asked to indicate "the effect of [Plaintiff's] medical treatment alone, specifically including the use of any medications, on [Plaintiff's] ability to engage in work-related activities," Dr. Schosheim responded that there were no such effects, while noting that "[s]ome [medications] cause Drowsiness," but this was "not mentioned as symptom by treaters." (AR 4400).

Plaintiff's counsel then submitted cross-interrogatories. (AR 4408-09). These asked, among other things: "Could

_____

[5] Dr. Schosheim presumably meant the reverse – i.e., ten pounds frequently and twenty pounds occasionally.

[Plaintiff's] medical impairments reasonably cause her to be off task during a regular 8-hour workday?" (AR 4409). In response to this question, Dr. Schosheim wrote: "May be off task up to 2 [hours]/day out of 8 [hours] due to loss of concentration [and] pace [and] Drowsiness from multiple prescribed meds." (AR 4413). Plaintiff's cross-interrogatories also asked: "Could [Plaintiff's] medical impairments reasonably result in exacerbations of symptoms that would cause her to miss days off work?" (AR 4409). Dr. Schosheim responded: "~3-5 Days/Month [due to] Fibromyalgia [and] post Cervical laminectomy syndrome." (AR 4413).

The ALJ, reviewing the medical evidence in the decision, gave great weight to the opinion Dr. Schosheim provided in response to the ALJ's interrogatories. (AR 35-36). The ALJ's RFC finding largely adopted Dr. Schosheim's assessment of Plaintiff's limitations. (See AR 30-31, 4398-99). The ALJ found that Dr. Schosheim was a well-qualified medical expert who had access to the fully-developed medical record. (AR 35). The ALJ also found that Dr. Schosheim's opinion of Plaintiff's limitations was "generally consistent with the overall record, including the comparatively modest objective evidence" and Plaintiff's "largely conservative treatment records." (AR 35-36).

However, the ALJ determined that no further limitations were warranted based on Dr. Schosheim's responses to Plaintiff's cross-interrogatories, including Dr. Schosheim's statements that Plaintiff "[m]ay be off task" for up to two hours a day due to a loss of concentration or to drowsiness from medications," and that

Plaintiff could miss about "3-5 Days/Month [due to] Fibromyalgia [and] post Cervical laminectomy syndrome." (AR 36, 4413). The ALJ gave the following explanation for rejecting these additional assessments:

> [Dr. Schosheim] never alluded to such "off task" or work absence limitations in his initial responses to my interrogatories, in which [Dr. Schosheim] explicitly stated that he was "only discuss[ing] impairments starting [on] 10-24-12 [and continuing through] 12-31-13," and explicitly stated that there were not "any other limitations or restrictions[] on [Plaintiff's] ability to do basic work activities established by the records as a whole," aside from those noted in the functional assessment he provided therein. In other words, Dr. Schosheim did not assess "off task" or work absence limitations in the functional assessment he provided in response to my interrogatories, which assessment I find to be generally consistent with the overall evidence, for reasons explained herein. Indeed, I find it significant that Dr. Schosheim went out of his way to note, in response to my interrogatories, that although "some med[icatons]s cause drowsiness[,] [that issue was] not mentioned as [a] symptom by treaters." Accordingly, while [Plaintiff's counsel] may wish to argue that Dr. Schosheim, in response to [Plaintiff's counsel's] own interrogatories, amended his opinion in a way that favors [Plaintiff], given that he suggested, among other

points, that [Plaintiff] "may be off task up to 2 hours/day out of 8 hours due to [a] loss of concentration [and] pace [and] drowsiness from multiple prescribed medications," this later opinion is at odds with Dr. Schosheim's own review of the record. In fact, the specific pages of evidence to which Dr. Schosheim referred as support for his later-expressed opinion that [Plaintiff's] medications "would effect [sic] [her] ability to work 5 days/week [and] 8 h[ou]rs/day" . . . say no such thing. Moreover, Dr. Schosheim provided no specific citations to evidence supporting his response to [Plaintiff's counsel's] interrogatory regarding "days off work," which, in addition to other reasons discussed above, leaves me disinclined to accept Dr. Schosheim's later-expressed assessment. In short, Dr. Schosheim's later-expressed opinions were solicited by [Plaintiff's] attorney in a carefully calculated way that, while I may commend [Plaintiff's counsel] for her zealous efforts on behalf of [Plaintiff], frankly renders them much less reliable than his initial assessment and more open to attack. In contrast, [Dr. Schosheim's] initial assessment, as explained herein, survives any such attack; it not only represents the more unbiased opinion, it is also better supported and more consistent with the overall evidence and therefore entitled to greater weight.

(AR 36) (record citations omitted).

### 2.  Applicable Law

Social Security regulations require the Agency to "evaluate every medical opinion" that it receives. 20 C.F.R. § 404.1527(c). An ALJ may reject the medical opinions of examining physicians or non-examining physicians (including non-examining medical experts) only by providing specific and legitimate reasons supported by substantial evidence. See Murphy v. Comm'r of Soc. Sec. Admin., 423 F. App'x 703, 705 (9th Cir. 2011) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)); Mark D. v. Comm'r of Soc. Sec., 2018 WL 6804319, at *6 (W.D. Wash. Dec. 27, 2018) ("An ALJ must still give specific and legitimate reasons to reject a non-examining doctor's opinion, or significant parts of it.") (citing Shafer v. Astrue, 518 F.3d 1067, 1069-70 (9th Cir. 2008)). An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).

### 3.  Analysis

Plaintiff contends that the ALJ failed to provide adequate reasons to reject Dr. Schosheim's opinion in response to Plaintiff's cross-interrogatories – specifically, the limitations of being off-task up to two hours a day and missing work 3-5 days a month. (Joint Stip. at 9-11). However, the ALJ properly rejected

Dr. Schosheim's later responses by providing several specific and legitimate reasons. Among these reasons, the ALJ reasonably found that the later responses were less reliable because they contradicted Dr. Schosheim's initial responses, and seemed to have been solicited by the "carefully calculated" questions of Plaintiff's counsel. (AR 36). The ALJ also reasonably concluded that the later responses did not warrant great weight because they were not supported with citations to the record and were less consistent with the objective evidence in the record. (AR 36). Plaintiff's contentions fail to demonstrate otherwise.

Plaintiff disputes the ALJ's remark that Dr. Schosheim's later responses were unreliable because Plaintiff's counsel's cross-interrogatories were "carefully calculated." (Joint Stip. at 9). As noted above, these cross-interrogatories included the following questions:

4. Could [Plaintiff's] medical impairments reasonably cause her to be off task during a regular 8-hour workday?

5. Could [Plaintiff's] medical impairments reasonably result in exacerbations of symptoms that would cause her to miss days off work?

(AR 4409) (emphasis added). Because these questions ask whether Plaintiff's impairments could have certain consequences (i.e., being absent or off-task), Dr. Schosheim's affirmative responses

may reasonably be interpreted to mean that such consequences are merely _possible_, even if unlikely. Indeed, the wording of Dr. Schosheim's response to question 4 – that Plaintiff "_may_ be off task up to 2 hours/day . . . ," as the ALJ himself emphasized (_see_ AR 36, 4413) – supports this interpretation. It was therefore reasonable for the ALJ to construe the responses as unreliable in light of the wording of these questions.

The ALJ also reasonably determined that Dr. Schosheim's responses to the later questions conflicted with his responses to the initial questions. (AR 36). As the ALJ correctly pointed out, Dr. Schosheim "never alluded to such 'off task' or work absence limitations in his initial responses to [the ALJ's] interrogatories." (AR 36). Dr. Schosheim instead indicated in his initial responses that there were not "any other limitations or restrictions[] on [Plaintiff's] ability to do basic work activities established by the records as a whole," and also that no further limitations were attributable to Plaintiff's medications. (_See_ AR 36, 4400). On the latter point, the ALJ reasonably found it "significant that Dr. Schosheim went out of his way to note, in response to [the ALJ's] interrogatories, that although 'some med[icatons]s cause drowsiness[,] [that issue was] not mentioned as [a] symptom by treaters.'" (AR 36) (quoting AR 4400). These statements from Dr. Schosheim certainly do seem to conflict, to some extent, with his later statement that Plaintiff "[m]ay be off task up to 2 [hours]/day out of 8 [hours] due to loss of concentration [and] pace [and] _Drowsiness from multiple prescribed meds_." (AR 4413) (emphasis added).

13

Plaintiff also disputes the ALJ's finding that Dr. Schosheim's initial interrogatory responses were more consistent with the medical evidence than were his later responses to the counter-interrogatories. (Joint Stip. at 10). Plaintiff particularly takes issue with the ALJ's characterization of the objective medical evidence as "comparatively modest," and of Plaintiff's treatment as "largely conservative." (Joint Stip. at 10; see AR 35-36). However, the ALJ provided a specific and detailed evaluation of the medical evidence to support these findings. For example, the ALJ noted that many of the imaging studies in the record "explicitly refer to findings that are only mild or moderate at most." (AR 33) (citing AR 510-11, 1487-88, 1496, 1499, 1502, 1507).[6] The ALJ also noted Plaintiff's "often fairly unremarkable physical exam findings," particularly with respect to fibromyalgia, about which the ALJ was "frankly unable to find clear documentation of specific numbers and locations of relevant tenderpoint findings in the period at issue." (AR 29, 33) (citing, e.g., AR 511-12, 652, 663, 695, 760, 786). The ALJ also discussed and cited record evidence indicating that, aside from some injections and a 2013 surgery, Plaintiff's symptoms were "generally managed with largely conservative treatment measures[,] such as medications, routine follow-up appointments, and the like," and these measures, including the injections and surgery, did "yield some (albeit

---

[6]    While the ALJ's citations refer to the pages as numbered within the individual exhibits compiled in the record, this Order refers to the corresponding page numbers of the Administrative Record. For example, where the ALJ here cites pages 3-4 of Exhibit B2F, the Court refers to these same pages by their corresponding Administrative Record page numbers, AR 510-11.

14

reportedly not total) relief." (AR 37-38) (citing AR 508-09, 578, 649, 691-92, 756-57, 1811, 1904, 2885-86). Even if the evidence may be susceptible to different views, the ALJ's findings on this issue are reasonable and supported by substantial evidence.

In addition, the ALJ reasonably found that the lack of record citations in Dr. Schosheim's later responses also made them less reliable. The only two pages that Dr. Schosheim cited in the later responses contain little more than lists of Plaintiff's diagnoses and prescriptions. (See AR 599, 634, 4412). As the ALJ pointed out, these cited pages do not reflect any limitations resulting from Plaintiff's medications, nor do they suggest any further limitations from her conditions. (See AR 36, 599, 634).

Accordingly, Plaintiff has failed to demonstrate any error in the ALJ's consideration of Dr. Schosheim's opinions. The ALJ's findings and conclusions must be upheld, as they are based on specific and legitimate reasons, and supported by substantial evidence in the record. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ determines credibility, resolves conflicts in the testimony, and resolves ambiguities in the record); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld").

**B.    The ALJ Properly Discounted Plaintiff's Subjective Statements**

**1.    Pertinent Facts**

Plaintiff testified at the hearing on January 25, 2018, that she had been unable to work due to lower back pain and neck pain that radiated down her right arm. (AR 69-72, 85). She had been treated with pain medications, physical therapy, and different injections. (AR 72-73, 82-84, 86-89). She stated that her injections provided some temporary relief to her pain. (AR 84). She also underwent neck surgery in January 2013 and low back surgery in January 2016. (AR 74). Plaintiff stated that her 2013 surgery did not help. (AR 75). She also testified that she had been in psychiatric treatment since 2012, and had developed problems remembering and concentrating. (AR 89-92).

Plaintiff testified that she had difficulty grasping and lifting objects (AR 74), and she could not stand for more than thirty minutes before needing to lie down (AR 77). She stated, moreover, that she needed to lie down periodically throughout the day to alleviate the pain. (AR 77-78). She testified that she drove, bathed, and dressed herself, though with some difficulty. (AR 80, 82). Plaintiff reported that around January 2013, she began living with her sister, who helped with daily activities. (AR 92).

The ALJ, assessing these statements and record as a whole, found that while Plaintiff's "medically determinable impairments

could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (AR 31). The ALJ remarked that "there appears to be a disconnect between [Plaintiff's] subjective complaints regarding the period now at issue on one side, and what the comparatively modest diagnostic and clinical evidence regarding that period will reasonably support on the other." (AR 37). In addition to the objective medical evidence, the ALJ found that the severity of Plaintiff's subjective complaints was undermined, as well, by her treatment history and her daily activities. (AR 37-39).

### 2. Applicable Law

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including a claimant's statements and residual functional capacity assessments made by consultative examiners, State Agency physicians, and medical

experts.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913(c).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  Id. at 1014-15; see also Robbins, 466 F.3d at 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."  Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.  SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility" from the Agency's sub-regulatory policy.  However, the Ninth Circuit has noted that SSR 16-3p "makes clear what [the Ninth Circuit's] precedent already required":

> that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 679 n.5 (quoting SSR 16-3p) (alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek

19

treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter, 806 F.3d at 493 ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role

to second-guess it." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

### 3. Analysis

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject her testimony regarding her symptoms and functional limitations. (<u>See</u> Joint Stip. at 20-25). However, Plaintiff fails to identify any material error in the ALJ's assessment, which is supported by substantial evidence in the record.

First, the ALJ reasonably found that the severity of Plaintiff's alleged limitations contrasted with "the comparatively modest diagnostic and clinical evidence." (AR 37). The ALJ supported this with a detailed review of the medical evidence in the record (as discussed above with respect to the first issue). This factor, when accompanied by other clear and convincing grounds, is an appropriate basis for discounting a claimant's subjective statements. <u>See</u> <u>Rollins</u>, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

The ALJ also reasonably discounted Plaintiff's testimony based on evidence that her treatments were largely conservative and generally effective in controlling Plaintiff's pain and symptoms. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Tommasetti, 533 F.3d at 1040 ("The record reflects that Tommasetti responded favorably to conservative treatment . . . . Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) ("evidence suggesting that [the claimant] responded well to treatment" supports an adverse credibility finding). Here, the ALJ noted, among other things, that while Plaintiff "did undergo anterior cervical fusion with internal fixation on January 11, 2013, it apparently was completed successfully," considering that Plaintiff's "surgeon noted that 'no complications occurred' and [Plaintiff] herself reported months later that '[the surgery] was helpful.'" (AR 33) (citing AR 578, 2885-86). The ALJ further found that other than this 2013 surgery and some injections, Plaintiff's conditions during the relevant period were "generally managed with largely conservative treatment measures - such as medications, routine follow-up appointments, and the like - and that these measures did, by [Plaintiff's] own admission, yield some (albeit reportedly not total) relief." (AR 37-38) (citing AR 508-09, 649, 691-92, 756-57, 1811, 1904). The ALJ remarked that he saw "little in the way of other aggressive treatment measures in the period now at issue - such as further surgeries to address one or more of

[Plaintiff's] spinal impairments, gastric bypass to alleviate her obesity, ongoing hospitalizations (to treat one or more of her physical impairments, mental impairments, or both), frequent emergency room visits, or the like - for any of her conditions in that period." (AR 38) (citing AR 1540).

The ALJ also found that, to the extent Plaintiff's symptoms persisted despite prescribed treatments, it may be at least partly due to Plaintiff's failure to fully comply with such treatments. (AR 38). This, too, is an appropriate basis for discounting a claimant testimony. See, e.g., Owen v. Astrue, 551 F.3d 792, 799-800 & n.3 (8th Cir. 2008) ("claimant's noncompliance" with prescribed treatment (e.g., "[failure to] follow regular exercise and dietary plans") may be considered "inconsistent with a treating physician's medical opinion"); Ohman v. Berryhill, 2018 WL 1316903, *9 (E.D. Cal. Mar. 14, 2018) ("A plaintiff's failure to follow a physician's prescribed course of treatment is a specific and legitimate reason for rejection [of] the physician's opinion.") (citations omitted); see generally 20 C.F.R. § 404.1530(b) (if a claimant "do[es] not follow [a doctor's] prescribed treatment without a good reason" may not be found disabled). Here, for example, the ALJ specifically noted evidence indicating that Plaintiff, at times, had failed to keep up with her medications or attend therapy appointments. (AR 38) (citing AR 578, 751, 805). Moreover, to the extent that financial concerns may have contributed to Plaintiff's treatment noncompliance, the ALJ also found that Plaintiff was "well aware of various programs that provide care to those with specific [financial] needs." (AR 38-

39) (citing AR 1938, 2901).  The ALJ thus reasonably determined that if Plaintiff's conditions had been as debilitating as she claimed, then "one might reasonably expect that [Plaintiff] would have sought - and, if warranted, received - more consistent and/or more aggressive forms of care in that period."  (AR 39).

In addition, the ALJ supported his assessment of Plaintiff's testimony by finding that Plaintiff's daily activities were "not fully consistent with claims of disabling impairment."  (AR 39). The ALJ noted, for example, that Plaintiff admitted she was able to do laundry, dress herself, drive, and engage in other activities, such as going to the "[g]ym for water and sauna," that "one might not expect a person with [Plaintiff's] allegedly disabling symptoms (such as debilitating pain and memory problems) to be able to perform."  (AR 39) (citing AR 527; see also AR 80, 82).  In considering these activities, the ALJ clarified that he was "not saying that [Plaintiff's] activities, by themselves, equate[d] with work activity or show[ed] the ability to engage in work."  (AR 39). The ALJ found, rather, that Plaintiff's activities "suggest[ed] that she had greater capabilities in the period at issue" than she alleged.  (AR 39).  This factor, while not overwhelming on its own, reasonably supported the ALJ's conclusion that Plaintiff's "allegations of disabling impairment [were] not entirely consistent with the overall record."  (AR 39); see Burrell, 775 F.3d at 1137 ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of

symptoms alleged can support an adverse credibility determination."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage finances).

Accordingly, the ALJ appropriately discounted Plaintiff's subjective testimony by providing specific, clear and convincing reasons supported by substantial evidence in the record.

**C.** **The ALJ Properly Found Plaintiff Not Disabled at Step Five**

**1.** **Applicable Law**

At step five of the sequential evaluation process, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation omitted). In making this finding, the ALJ determines "whether, given the claimant's RFC, age, education, and work experience, he actually can find some work in the national economy." Id. at 846 (citation omitted); see also 20 C.F.R. § 404.1520(g) ("we will consider [your RFC] together

with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work").

The ALJ generally relies on the testimony of the vocational expert to make the appropriate determination at step five. 20 C.F.R. § 404.1566(e); 20 C.F.R. § 416.966(e). An ALJ may call upon the vocational expert to testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). In doing so, an ALJ "poses hypothetical questions to the vocational expert that set out all of the claimant's impairments for the vocational expert's consideration." Id. (citation omitted). When a hypothetical includes "all of the limitations that the ALJ found credible and supported by substantial evidence in the record," then the ALJ may properly rely on the vocational expert's response. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of qualified vocational expert constitutes substantial evidence); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (quoting Conn v. Sec'y of Health and Human Servs., 51 F.3d 607, 610 (6th Cir. 1995)).

## 2. **Analysis**

Plaintiff contends that the ALJ erred in finding Plaintiff not disabled at step five because the ALJ relied on the vocational expert's response to a hypothetical that omitted the work-related limitations assessed by medical expert Dr. Schosheim in response to Plaintiff's counter-interrogatories – specifically, Dr. Schosheim's responses indicating Plaintiff would be off-task up to two hours in an eight-hour workday and would miss work 3-5 days a month. (Joint Stip. at 36; see AR 4413). As Plaintiff points out, the vocational expert stated that these additional limitations would preclude any full-time sustained employment in jobs existing in significant numbers in the national economy. (AR 487-89).

However, as discussed above (with respect to the first issue), the ALJ appropriately rejected these additional limitations assessed by Dr. Schosheim, and thus did not incorporate such limitations in the RFC assessment. (See AR 30-31, 36). At step five, the ALJ relied on the vocational expert's response to a hypothetical that contained all the same functional limitations that the ALJ assessed in the RFC. (See AR 30-31, 40-43, 481-82). For the reasons discussed above, Plaintiff has failed to identify any material error in the ALJ's RFC assessment. Accordingly, the ALJ properly relied on the vocational expert's response at step five, which constitutes substantial evidence in support of the ALJ's decision. See Bayliss, 427 F.3d at 1217-18; Osenbrock, 240 F.3d at 1163.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 22, 2021

_____
/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE
